IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAUL TALBERT,                                    :
               Petitioner,        :        1:18-cv-0953
                               :
            v.                             :        Hon. John E. Jones III
                               :
SUPERINTENDENT LAUREL          :
HARRY, *et al*.,                                  :
               Respondents.     :

## **MEMORANDUM**

## **February 3, 2021**

Petitioner Paul Talbert ("Petitioner" or "Talbert"), a state inmate presently on probation, files the instant petition (Doc. 1, 1-1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254, accompanied by exhibits (Docs. 1-1 through 1-4), seeking relief from the Judgment of Sentence of two-and-a-half to five years imprisonment followed by five years of probation entered in the Court of Common Pleas of York County, Pennsylvania, on April 21, 2014, in criminal case CP-67-2721-2011, after a jury found him guilty of various crimes including Aggravated Indecent Assault of a person less than 16 years of age, Indecent Assault, and Corruption of Minors.  Respondents answered the petition with a Response (Doc. 12) and Exhibits (Docs.1-1, 1-2).  Thereafter, Talbert filed a Traverse.  (Doc. 14).[1]

---

[1]  Although Talbert sets forth a plethora of claims in his petition, most, if not all, of his supporting arguments are contained in his Traverse.

The petition, which is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996, is ripe for decision. For the reasons set forth below, the petition will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Superior Court of Pennsylvania set forth the following relevant factual background and procedural history while reviewing Talbert's appeal from a November 15, 2016 PCRA court order denying relief::

> On March 25, 2011, Appellant was charged with a number of crimes, including aggravated indecent assault of a person less than16 years of age, indecent assault, and corruption of minors. [n.1: 8 Pa.C.S.A. §§ 3125(a)(8), 3126(a)(8), and 6301(a)(1), respectively.]. Appellant proceeded to a jury trial, where the victim testified that Appellant is her stepfather and that he began sexually abusing her when she was around 12 years of age. As the victim testified, Appellant is along-haul truck driver and Appellant first sexually abused her in his truck, when he was on a work-trip to New Jersey. N.T. Trial, 8/12/13, at 81-83. The victim testified that, during this incident, Appellant "tried to put his dick in [her] vagina," but that she could not remember whether Appellant succeeded in doing so. *Id.* at 83-84. The victim testified that Appellant next sexually assaulted her approximately one to two years later and that, after the second time, Appellant sexually abused her about "once or twice a month" until she was 16 years old. *Id.* at 86 and 89. Further, the victim testified that, during the later instances of abuse, Appellant would either rub [her] clit[oris] or put his finger in" her vagina – and that Appellant did so multiple" times. *Id.* at 89-94.
>
> On August 13, 2013, a jury convicted Appellant of the above-mentioned crimes and, on April 21, 2014, the trial court sentenced Appellant to serve a term of two-and-a-half to five years in prison,

followed by five years of probation.   N.T. Sentencing, 4/21/14, at 73-74.   This Court affirmed Appellant's judgment of sentence on August 4, 2015;  our Supreme Court denied Appellant's petition for allowance of appeal on December16, 2015. *Commonwealth v. Talbert*, 131 A. 3d 81 (Pa. Super. 2015) (unpublished memorandum) at 1-14, appeal denied, 128 A.3d 220 (Pa. 2015).

On February 3, 2016, Appellant filed a *pro se* PCRA petition.   The PCRA court appointed counsel and Appellant filed an amended petition on May 16, 2016.   The PCRA court held hearings on May 27,  and July 29, 2016.  On November 16, 2016, the PCRA court denied relief.  This timely appeal follows.

(Doc. 12-2, pp. 581-83).  The Superior Court noted that, although Talbert raised a number of issues in his Pennsylvania Rule of Appellate Procedure 1925(b) statement, including ineffective assistance of counsel and lower court error related to after discovered exculpatory evidence, he failed to include a Pennsylvania Rule of Appellant Procedure 2116 "statement of questions involved" section in his brief. (*Id.* at 583-85).  The court concluded that because "he clearly and distinctly 'identifies the specific issue[s]…in the argument section of [the] appellate brief…[his] failure to comply with Rule 2116(a) does not impede our ability to review the issue[s]…"  (*Id.* at 585, n.3).  The Superior Court extracted the following ineffective assistance of counsel appellate issues from Talbert's brief:

1. Because the failure to cross-examine [the victim] on prior inconsistent statements is both of arguable merit and raises a reasonable probability of a different verdict, the [trial]court erred.

3

2. Because trial counsel's failure to call multiple witnesses regarding prior inconsistent statements of [the victim]  is both of arguable merit and raises the reasonable probability of a different verdict, the [trial] court erred.

3.  Trial counsel's failure to develop an adequate trial strategy because of his insufficient communication with [Appellant] requires a new trial.

4. Because trial counsel's failure to introduce prior inconsistent statements of [the victim] regarding the charged offense is both of arguable merit and raises the reasonable probability of a different verdict, the [trial] court erred.

Appellant's Brief at 1-30. [footnotes omitted].

 (*Id.* at 584-85).  The court also considered his contention that he was entitled to relief based on exculpatory after-discovered evidence.  (*Id.* at 592).  The Superior Court affirmed the PCRA court's order denying relief.  Talbert filed a Petition for Allowance of Appeal with the Supreme Court; the court denied the petition on March 26, 2018.  (*Id.* at 597).

Thereafter, Talbert timely filed the instant petition pursuant to 28 U.S.C. § 2254.

## II.   <u>28 U.S.C. § 2254 STANDARDS OF REVEW</u>

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner in custody pursuant to the judgment of a state court to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  28 U.S.C. § 2254, provides, in pertinent part:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

> (A)   the applicant has exhausted the remedies available in the courts of the State;
>
> ...

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

Section 2254 clearly sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider such a petition only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.

Further, a federal habeas court may not consider a petitioner's claims of state law violations; review is limited to issues of federal law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.").

## III.   <u>GROUNDS FOR RELIEF</u>

Talbert seeks habeas relief based on the following grounds:

<u>Ground One</u>:  The PCRA court erred in denying him relief on Sixth Amendment right effective assistance of counsel grounds when trial counsel testified at the PCRA hearing that he was "ineffective on multiple levels."

<u>Ground Two</u>:  Trial counsel was ineffective in failing to discuss with him and his family any witnesses who would testify and establish his innocence.

<u>Ground Three</u>:  Trial counsel violated his right to effective assistance of counsel based on "complete failure to have in place any trial

strategy, to discuss any trial strategies with his client, or do any pretrial research and investigation."

Ground Four:  Trial counsel was ineffective in failing to partake in any pretrial discussion with him and his family regarding questions that should be asked of trial witnesses.

Ground Five:  Trial counsel failed to investigate, interview, and arrange to have witnesses at trial including the case worker from children and youth, individuals from York Hospital, and Detective Hopple.

Ground Six:  Trial counsel vailed to engage in adequate pretrial preparation and failed to adequately cross-examine any of the state's witnesses.

Ground Seven:  Trial counsel's failure to obtain a medical expert in Asperger's Disorder and failure to conduct research in this field which hampered his ability to cross-examine the state's medical expert.

Ground Eight:  Trial counsel failed to prepare and cross-examine the victim about her multiple inconsistent statements made during all stages of the proceedings.

Ground Nine:  Trial counsel failed to conduct any pre-trial investigation, research, and to communicate with his family about evidence that clearly would have proven his innocence.

Ground Ten:  The PCRA court violated his due process rights in failing to afford him relief based on newly discovered evidence that would have proven his innocence.

(Doc. 1, pp.  5, 7, 9-11, 13, 15, 17, 19; Doc. 1-1, pp. 1, 3).

## IV.   DISCUSSION

### A.     Exhaustion, Waiver, and Procedural Default

#### 1.   Exhaustion

Absent unusual circumstances, a federal court should not entertain a petition

for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion

requirement articulated in 28 U.S.C. § 2254(b).  Specifically, habeas relief "shall

not be granted unless it appears that . . . the applicant has exhausted the remedies

available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The exhaustion requirement is

grounded on principles of comity to ensure that state courts have the initial

opportunity to review federal constitutional challenges to state convictions.  *See*

*Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*, 404 U.S.

270, 275–76 (1971).

The habeas statute codifies this principle by requiring that a petitioner

exhaust the remedies available in the courts of the State, 28 U.S.C. §

2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one

complete round of the state's established appellate review process," before

bringing them in federal court.  *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the

exhaustion doctrine is designed to give the state courts a full and fair opportunity

to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent. *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976). Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.

### 2. Waiver

Additionally, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *See, e.g., Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed.

9

158 (1935); *Klinger v. Missouri*, 13 Wall. 257, 263, 20 L.Ed. 635 (1872). This rule

applies whether the state law ground is substantive or procedural. *See, e.g., Fox*

*Film, supra; Herndon v. Georgia*, 295 U.S. 441, 55 S.Ct. 794, 79 L.Ed. 1530

(1935)." *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991), holding modified

by *Martinez v. Ryan*, 566 U.S. 1 (2012).  The requirements of "independence" and

"adequacy" are distinct.  *Johnson v. Pinchak*, 392 F.3d 551, 557-59 (3d Cir. 2004).

State procedural grounds are not independent, and will not bar federal habeas

relief, if the state law ground is so "interwoven with federal law" that it cannot be

said to be independent of the merits of a petitioner's federal claims. *Coleman*, 501

U.S. at 739-40. A state rule is "adequate" for procedural default purposes if it is

"firmly established and regularly followed." *Johnson v. Lee*, —— U.S. ——, 136 S.

Ct. 1802, 1804, 195 L.Ed.2d 92 (2016) (*per curiam*) (citation omitted).  These

requirements ensure that "federal review is not barred unless a habeas petitioner

had fair notice of the need to follow the state procedural rule," and that "review is

foreclosed by what may honestly be called 'rules' ... of general applicability[,]

rather than by whim or prejudice against a claim or claimant." *Bronshtein v. Horn*,

404 F.3d 700, 707-08 (3d Cir. 2005).  "In the absence of the independent and

adequate state ground doctrine in federal habeas, habeas petitioners would be able

to avoid the exhaustion requirement by defaulting their federal claims in state

court. The independent and adequate state ground doctrine ensures that the States'

interest in correcting their own mistakes is respected in all federal habeas cases."

*Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000).

a. *Pennsylvania Rules of Appellate Procedure 1925(b)*

In Pennsylvania, "[w]here a defendant is ordered to file a concise statement

of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and fails to

raise a particular matter within that statement, the defendant is deemed to have

waived that point of error on appeal." *Burnam v. Capozza*, No. 20-CV-1800, 2020

WL 7130600, at *15 (W.D. Pa. Dec. 4, 2020) (citations omitted). Pennsylvania

"jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b)

sets out a simple bright-line rule, which obligates an appellant to file and serve a

Rule 1925(b) statement, when so ordered [and] any issues not raised in a Rule

1925(b) statement will be deemed waived." *Copper v. Superintendent of SCI-

Greene*, No. CV 18-4577, 2019 WL 1796049, at *5 (E.D. Pa. Apr. 3, 2019), report

and recommendation adopted sub nom. *Copper v. Superintendent of SCI-Green*,

No. 18-CV-4577, 2019 WL 1787654 (E.D. Pa. Apr. 24, 2019), quoting *Griggs v.

DiGuglielmo*, No. 06-1512, 2007 WL 2007971, at *5 (E.D. Pa. July 3, 2007); *Com.

v. Lord*, 719 A.2d 306 (1998) (finding issues not included in a Pa.R.A.P.1925(b)

statement are deemed waived on appeal). Federal district courts in this district as

well as a panel of the Third Circuit, have held that waiver of an issue for failure to comply with PA.R.A.P. 1925(b) is an independent and adequate state ground of decision that bars habeas review under *Coleman*.  *See Buck v. Colleran*, 115 F. App'x. 526, 528 (3d Cir. 2004) (not precedential*); Brown v. Bickell*, 2015 WL 1874220, at *25 (E.D. Pa. 2015) (citing cases).

Although Talbert raised various portions of the issues set forth in grounds two through seven and nine, in his initial PCRA proceedings, he failed to include them in his 1925(b) statement.[2]  (Doc. 12-2, pp. 14-25, 460-61).  He also failed to include his ground one claim in his 1925(b) statement.  These claims are therefore waived.

### b.  *Pennsylvania Rule of Appellate Procedure 2116*

Pennsylvania Rule of Appellate Procedure 2116 provides that "[n]o question will be considered [on appeal] unless it is stated in the statement of questions

---

[2]  In his third, fourth, fifth, and sixth grounds, he raises claims of ineffectiveness emanating from trial counsel's pretrial strategy, investigation, and preparation, including, *inter alia*, counsel's failure to involve his family members (who he asserts were most aware of the limitations he suffered due to his Asperger Syndrome diagnosis) in selecting witnesses.  (Doc. 1; Doc. 14, pp. 22-34).  However, the only claim concerning counsel's pretrial strategy, investigation and preparation contained in his 1925 statement is that "[t]he lower court erred in finding that trial counsel was not ineffective for failing to adequately investigate and prepare pretrial as a result of the Defendant's lack of communication and lack of understanding due to his Asperger's", which Talbert addresses in ground four.  (*Id.* at p. 461; Doc. 14, pp. 26-28).  This claim will be addressed in the merits section, *infra*.  It is also noted that, at the PCRA hearing, Talbert withdrew the claim contained in his seventh ground.  (Doc. 12-2, pp. 134-35).  Lastly, in his Traverse, Talbert combines Grounds Nine and Ten. (Doc. 14, p. 41).

involved or is fairly suggested thereby." (*Id.* citing Rule 2116(a)). Courts within the Third Circuit "have found Rule 2116 to be an independent and adequate state court ground precluding federal review[.]" *Litz v. Erie Cty. Dist. Attorney*, No. 1:19-CV-00001, 2020 WL 3950151, at *7 (W.D. Pa. May 13, 2020), report and recommendation adopted sub nom. *Litz v. Pennsylvania*, No. 1:19-CV-01, 2020 WL 3893787 (W.D. Pa. July 10, 2020) citing *Boatright v. Gilmore*, 2018 WL 3968416, *9 (citing *Davis v. McGinley*, 2018 WL 3596867, at *4 (E.D. Pa. Feb. 21, 2018), report and recommendation adopted, 2018 WL 3585171 (E.D. Pa. July 25, 2018); *Vega v. State Com Inst. at Forrest*, 2016 WL 4467924, at *4 (E.D. Pa. July 14, 2016), report and recommendation adopted, 2016 WL 4430791 (E.D. Pa. Aug. 22, 2016); *Tyson v. Beard*, 2013 WL 4547780, at *17-18 (E.D. Pa. Aug. 27, 2013).

In considering Talbert's appeal of the denial of PCRA relief, the Superior Court initially addressed his failure to include a Pennsylvania Rule of Appellate Procedure 2116 "statement of questions involved" section in his brief. (Doc. 12-2, p. 585, n.1). The court noted that, because caselaw allows the court to overlook a Rule 2116(a) violation, to the extent that "appellant clearly and distinctly 'identifies the specific issue[s]…in the argument section of [the] appellate brief…[his] failure to comply does not impede our ability to review the issue[s],'

and, accordingly we will not find waiver for failure to comply with Rule 2116 [as to those issues]." (*Id.*) (citations omitted).  The Superior Court then extracted and considered those issues in the argument section of Talbert's appellate brief that were clearly and distinctly identified.  Our review is limited to those issues.

In the eighth ground of his federal petition, he raises trial counsel's ineffectiveness in failing to prepare and cross examine the victim during trial about "multiple inconsistent statements given by her during all stages of this matter to include trial."  (Doc. 1; Doc. 14, p. 38).  He presented the same issue on appeal but the Superior Court limited its consideration to whether trial counsel was ineffective for failing to adequately cross-examine the victim regarding her alleged prior inconsistent statement "about:  'whether penetration occurred [and] the specific part of the body that she alleged [Appellant] penetrated and violated' when the victim was 12 years old and the two were in New Jersey, inside of Appellant's truck; 'the number of times there were truck rides during which [the victim] touched [Appellant];' and, 'the frequency of the incidents in the truck.' Appellant's Brief at 15-18."  (Doc. 12-2, p. 587).  The court reiterated that even though he claimed in his PCRA petition that trial counsel was ineffective for failing to cross-examine the victim on a number of additional, alleged inconsistencies, he "waived any claim that is not contained in the argument section

14

of his brief.  *Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016) (issues 'not developed in the brief's argument section will be deemed waived')." (*Id.* at p. 587, n.5). Our review is therefore confined to the claim specifically identified by the Superior Court, subject to the limitations set forth in the section *infra* concerning PA.R.A.P. 2119.  Talbert waived all other claims in ground eight.

Likewise, in ground ten of the petition, Talbert cites to a number of instances of after discovered evidence.  (Doc. 1-1; Doc. 14, pp. 42-48).  However, in his appellate brief, he limited his argument "to a letter that was allegedly written by the victim and dated November14,  2010."  (Doc. 10-2, p. 593).  Our review is limited to this issue; Talbert waived the remaining ground ten claims.

### c. *Pennsylvania Rules of Appellate Procedure 2119*

Pennsylvania Rule of Appellate Procedure 2119(a) requires that each argument presented on appeal be "followed by such discussion and citation of authorities as are deemed pertinent." PA. R.A.P. 2119(a). A failure to cite legal authorities or to develop argument results in waiver. *See, e.g., Williams v. Patrick*, No. 07-776, 2014 WL 2452049, at *7 (E.D. Pa. June 2, 2014) (explaining a "doctrine of waiver" has been long incorporated into Rule 2119(a) (overruled on other grounds); *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (citing *Commonwealth v. Burkett*, 830 A.2d 1034, 1038 (Pa. Super. 2003) and

*Commonwealth v. Miller*, 721 A.2d 1121, 1124 (Pa. Super. 1998)) (stating "Of

particular importance is the provision of Rule 2119(a) that a brief must contain a

developed argument augmented by citation to pertinent authorities. Arguments not

appropriately developed are waived.").  Federal courts in this circuit have

determined that this "waiver rule" is an independent and adequate state court

ground precluding federal review. *See Rodriguez v. Giroux*, No. CV 15-6182, 2017

WL 10821396, at *17 (E.D. Pa. Feb. 17, 2017), report and recommendation

adopted, No. CV 15-6182, 2019 WL 587314 (E.D. Pa. Feb. 12, 2019) (collecting

cases).

The Superior Court furthered whittled away at the claim that counsel was

ineffective in cross-examining the victim concerning inconsistent statements as

follows:

> At the outset, Appellant has failed to identify any portion of the record
> in which an inconsistency may be found regarding "the number of times
> there were truck rides during which [the victim] touched [Appellant]"
> and the frequency of the incidents in the truck."  *See* Appellant's Brief
> at7-10 and13-18.  Therefore, these claims are waived. *Commonwealth
> v. Spotz*,716 A.2d 580, 585 n.5 (Pa.1999) ("[the Pennsylvania Supreme
> Court] has held that an issue will be deemed  to be waived when an
> appellant fails to properly explain or develop it in his brief");
> *Commonwealth v, Perez*, 93 A.3d 829, 838  (Pa. 2014)  (to the extent
> appellant's claims fail to contain developed argument or citation to
> supporting authorities and the record, they are waived").

(Doc. 12-2, pp. 587-88).  The *Perez* case, upon which the Superior Court relied, emphasized that "[t]he Rules of Appellate Procedure set forth the fundamental requirements every appellate brief must meet.  As we noted in *Briggs*:

> The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review ... may be properly exercised. Thus, we reiterate that compliance with these rules by appellate advocates ... is mandatory.

*Briggs*, at 343."  *Perez*, 93 A.3d at 837-38.

Based on the foregoing, the portion of ground eight challenging counsel's failure to cross-examine the victim on the "the number of times there were truck rides during which [the victim] touched [Appellant]" and "the frequency of the incidents in the truck" is waived.  (Doc.12-2, p. 587).

### 3.   Procedural Default

The failure to properly present claims to the state court generally results in a procedural default. *Lines v. Larkin*, 208 F.3d 153, 150-60 (3d Cir. 2000).  "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'  28 U.S.C. § 2254(b).  In such cases, however,

applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless*, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards*, 529 U.S. at 451; *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by

18

asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

Talbert fails to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting these claims, and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.[3]  Nor is there any argument or indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496.  Federal review of these claim is foreclosed.

### B.    Non-Cognizable Claim

With regard to the fully exhausted claim in his tenth ground, whether he is entitled to relief based on the after discovered evidence of a letter allegedly written

---

[3]  Talbert does not invoke *Martinez v. Ryan*, 566 U.S. 1, 12, 16-17 (2012).  *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding.  *Id.* at 17; *see also Glenn*, 743 F.3d at 410.  Talbert does not assert that PCRA counsel was ineffective during the initial phase of the PCRA proceedings.

by the victim and dated November 14, 2010, he asserts that the PCRA court "violated his due process rights in denying his newly discovered evidence claim without a hearing in this matter to have a proper review of the facts and supporting evidence." (Doc. 12-2, p. 593; Doc. 1-1, p. 3; Doc. 14, pp. 42, 48). He indicates that at the PCRA proceedings held on May 27, 2016 and July 29, 2016, several items of after-discovered evidence were offered by the defendant. He further argues that had the documents been available to Attorney Blake at trial, they would have provided "substantive evidence of [the victim's] motive for fabricating the accusations and provided him "the ability to formulate a completely different motive for fabrication of the allegations against the defendant that he, otherwise, was not in a position to either investigate or prove." (Doc. 14, p. 49).

Inasmuch as Talbert is raising a claim of error in his PCRA appellate proceedings, he cannot do so. "[H]abeas proceedings are not the appropriate forum for [Talbert] to pursue claims of error at the PCRA proceeding." *Lambert*, 387 F.3d at 247; *see also Holland v. Folino*, No. CIV.A. 13-6623, 2015 WL 1400660, at *1 (E.D. Pa. Mar. 26, 2015) (noting that "[e]rrors alleged during state collateral review are non-cognizable on federal review"). "The federal courts are authorized to provide collateral review where a petitioner is in state custody or under a federal sentence imposed in violation of the [C]onstitution or the laws or

treaties of the United States. 28 U.S.C. §§ 2254, 2255.  Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954-55 (3d Cir. 1998). Because Talbert's claim is based on alleged error that occurred during his PCRA proceedings, it is not cognizable.

Further, to the extent he advances an actual innocence claim, we will address it in the merits section below.

### C.    Merits of Federal Claims

The following claims are fully exhausted and ripe for consideration on the merits:

> Ground Four:  Whether trial counsel was ineffective for not adequately investigating and preparing for trial caused by Talbert's inability to communicate effectively as a result of him having Asperger Syndrome.  (Doc. 12-2, p. 589; Doc. 1, pp. 10, 11; Doc. 14, pp. 26-28).

> Ground Eight:  Whether trial counsel was ineffective for failing to cross-examine  the victim regarding her alleged prior inconsistent statements about "whether penetration occurred [and]  the specific part of the body that she alleged [Talbert] penetrated and violated" when the victim was 12 years old and  the two were in New Jersey, inside of [his] truck[.]"  (Doc. 12-2, p. 587; Doc. 1, p. 19, Doc. 14, p. 40).

Ground Ten:  Whether "the PCRA court violated his due process rights in denying his newly discovered evidence claim without a hearing in this matter to have a proper review of the facts and supporting evidence."  (Doc. 12-2, p. 593;  Doc. 1-1, p. 3; Doc. 14, pp. 42, 48).

As set forth *supra*, under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims."  *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008) ).  Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.' " *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013).  However, when the highest state court that considered the claim does not issue a reasoned opinion, we "look through" that decision to the last reasoned opinion of the state courts, and we apply a rebuttable presumption that the higher court adopted the same

22

reasoning as that set forth by the lower court.  *Wilson v. Sellers*, — U.S. —, 138 S.

Ct. 1188, 1192 (2018).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief

functions as a guard against extreme malfunctions in the state criminal justice

systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38

(2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and

highly deferential standard . . . which demands that state-court decisions be given

the benefit of the doubt."  *Cullen*, 563 U.S. at 181 (internal quotation marks and

citation omitted).  The burden is on Talbert to prove entitlement to the writ.  *Id.*

A decision is "contrary to" federal law if "the state court applies a rule that

contradicts the governing law set forth in [Supreme Court] cases" or "if the state

court confronts a set of facts that are materially indistinguishable from a decision

of [the Supreme] Court and nevertheless arrives at a result different from [Supreme

Court] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[A] state court decision reflects an 'unreasonable application of such law'

only 'where there is no possibility fairminded jurists could disagree that the state

court's decision conflicts with [the Supreme] Court's precedents,' a standard the

Supreme Court has advised is 'difficult to meet' because it was 'meant to be.'

[*Harrison v.*] *Richter*, 562 U.S. 86, [ ] 102, 131 S.Ct. 770. As the Supreme Court

23

has cautioned, an 'unreasonable application of federal law is different from an incorrect application of federal law,' *Richter*, 562 U.S. at 101, 131 S.Ct. 770 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a higher bar. *Williams*, 529 U.S. at 411, 120 S.Ct. 1495." *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017). A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

   1. <u>Ineffective Assistance of Counsel</u>

The clearly established ineffective assistance of counsel standard as determined by the Supreme Court of the United States is as follows:

Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Shelton v. Carroll*, 464 F.3d 423, 438 (3d Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the *Strickland* test qualifies as "clearly established Federal law, as determined by the Supreme Court." *Williams*, 529 U.S. at 391, 120 S.Ct. 1495. Under *Strickland*, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052.  For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. 2052. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

*Id.* at 689, 104 S.Ct. 2052

> Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." *Id.* at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. *Id.* at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

> In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. 2052.

*Rainey v. Varner*, 603 F.3d 189, 197–98 (3d Cir. 2010).

When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

The Superior Court recognized noted the following:

> Counsel is…presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10A.3d1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:
>
> > (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that

> the outcome of the challenged proceedings would have been
> different.
>
> *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). "A failure
> to satisfy any prong of the test for ineffectiveness will require rejection
> of the claim." *Id.*

(Doc. 12-2, p. 586). The Third Circuit has specifically held that the very

ineffectiveness assistance of counsel test relied upon by the Superior Court in this

matter is not contrary to the Supreme Court's *Strickland* standard. *See Werts v.

Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Talbert does not argue otherwise.

Because the Superior Court did not apply law contrary to clearly established

precedent, Talbert is entitled to relief only if he can demonstrate that its

adjudication involved an unreasonable application of *Strickland*, or was based on

an unreasonable determination of the facts in light of the evidence.

### a. *Ground Four*

In ground four, Talbert contends that that counsel had a duty to make

reasonable investigation into all aspects of his case which "includes understanding

how to work with his client." (Doc. 14, p. 28). He argues that "[c]ounsel was fully

aware that he did not understand and the doctor who spent very little time with his

client was wrong in his diagnosis." (*Id.*). In support of his argument, he cites to

the transcript of the PCRA evidentiary hearing held on July 19, 2016, containing

the following segments of the district attorney's cross-examination of trial counsel,

Attorney Blake, and redirect examination by PCRA counsel:

Cross Examination

Q.  I know we have covered this ground already, I just have a couple of very brief follow-up questions about communication with Mr. Talbert.

A.  Sure.

Q:  Okay.  During trial, did he ever ask you to ask additional questions to witnesses?

A.  I think he made some type of comment like he wished I asked more at some point.  I don't believe he gave me any kind of specific areas of questions to ask.

Q.  Prior to the commencement of trial, did you and he talk about voir dire process and things of that nature?

A.  We did.

Q.  And did you talk about calling witnesses with respect to how you would handle cross examination?

A.  We did.

Q.  And did he give you any indication at that time that he didn't understand?

 A.  I can't say that he ever said – he made a statement like that. I don't think he ever said to me, I don't understand or anything of that nature. What would typically happen, I would give him the information and he sort of never looked at you.  Part of his mannerism he would look to the side and he gave the appearance he understood so.

Q.   So, to be fair, you had no reason to suspect that he wasn't comprehending what you were telling him?

A.  I think that's fair.

Redirect Examination

Q.   Attorney Blake, can you explain why it is that your answer in today's hearing may differ than the answer you previously gave?

A.  Absolutely.  There were clear concerns.  When Paul started on my caseload, I had a letter from the counselor in Maryland and from observations I had, we did the motion for reasonable accommodations. He then went to a professional, who told me he was competent.

      At that point I sort of had to follow his lead.  I am not a psychologist.  But in the beginning, even though all along I always had concerns.  I am not a psychologist.  I had to go along [with] them saying he was competent.

      I always felt like Paul struggled and, you know, he didn't seem to be – he didn't engage you in a back and forth conversation.  You would engage him in a conversation, he would bring up cars and other things.  We never could stay on topic and developing issues.

      I was told by a psychologist that he was competent, so I had to go forward that way.  That's outside my skill set.

(Doc. 12-2, pp. 291-94;  Doc. 14, pp. 27-28).

Talbert's challenge to his own competency by way of a claim for ineffective assistance is without merit.  To be competent to stand trial, a person must have "a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and must possess "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960).  In turn, it is well-settled that an attorney renders ineffective assistance

29

by failing to inquire into a defendant's competency and failing to request a competency hearing if there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency. *See Jermyn Horn*, 266 F.3d 257, 283–84, 300 (3d Cir. 2001).  Significantly, "competency is a state court factual finding that, if supported by the record, is presumed correct." *Taylor v. Horn*, 504 F.3d 416, 430 (3d Cir. 2007), citing *Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (citing *Maggio v. Fulford*, 462 U.S. 111, 118 (1983)); *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990) (*per curiam*)).  As such, the state court's findings as to competency, explicit or implicit, are presumed correct, unless the habeas petitioner can rebut the presumption by clear and convincing evidence. *Taylor*, 504 F.3d at 433; *see also* 28 U.S.C. § 2254(e)(1).

In considering the issue, the Superior Court noted that, at trial counsel's request, Talbert received a competency hearing and that his own expert deemed him competent to stand trial.  The court also quoted Talbert's expert's report at length:

> [Appellant's] current therapist went so far as to diagnose [Appellant] with Asperger's Disorder.  [Appellant] has many features of Asperger's Disorder.   A hallmark symptom is his social autism; however, [Appellant] fails to meet the criteria for repetitive restrictive and stereotype patterns of behavior.  While they may be present, there is no evidence of them in the materials presented to this examiner.

Furthermore,  Asperger's Disorder is a diagnosis typically diagnosed in childhood or adolescence.  [Appellant]  was treated in adolescence for depression and anxiety. At no time was he diagnosed with any of the autism spectrum disorders.  These would clearly have developed by that point.

…

[Appellant] was able to relate the charges and allegations against him. He was able to demonstrate understanding of his possible and probable sentences.    He knew who his attorney was and the Judge on the case. He was able to define a court of law.   He was able to identify the various components of a court of law and describe their functions. These included judge, jury, prosecuting attorney,  defense attorney, defendant, stenographer, and witness.  He was able to define a plea.  He was able to identify the various pleas and describe them well.  These included guilty, not guilty,  nolo contendere,  not guilty by reason of insanity, guilty but mentally ill[,]  and plea bargain. To those of which he was not immediately familiar, he was readily educated.

…

The defendant was able to demonstrate the capacity to communicate a choice.  He had the ability to understand the information relevant to his case.   He had the ability to understand his situation and its relevant consequences.   He was able to manipulate information rationally, relevantly and apply it to a personal value system.  The defendant has the verbal articulation skills required to cooperate with his attorney in the preparation of his defense and to challenge his accusers.   This opinion is considered stable over time.

(Doc. 12-2. Pp. 590-91, quoting PCRA Court Opinion; 11/15/ 16, at 30-31, *citing*

Forensic Psychiatric Evaluation, 1/22/13, at 3-4).

The court also considered trial counsel's PCRA hearing testimony that there

were a lot of things counsel asked for and discussed with his client, that Talbert

had the appearance that he understood and counsel had no reason to suspect that he

was not comprehending what he was telling him, that Talbert assisted in his own

defense and "that he explained and discussed with [Talbert] the *voir dire* process,

calling witnesses, cross-examination, and general trial strategy, and that [Talbert]

appeared to understand." (*Id.* at pp. 591-92). Finally, the court also considered his

testimony at his colloquy concerning whether his decision not to testify was

knowing and intelligent, during which he "answered the questions appropriately

and declared that he understood what was being said." (*Id.* at 591).

This particular ineffective assistance of counsel claim hinges on his

underlying claim that he was incompetent. However, the state courts' factual

determination, that Talbert was competent to stand trial, is presumed correct under

§ 2254(e)(I). Talbert has failed to rebut the presumption with clear and convincing

evidence. Review of the Superior Court's determination that the underlying

competency claim lacked arguable merit, and hence, counsel could not be deemed

ineffective in failing to adequately communicate with him or prepare and

investigate for trial on this basis, coupled with the lack of evidence that he was

unable to assist in his defense or unable to communicate with counsel, was a

reasonable application of *Strickland*. Additionally, it constitutes an objectively

reasonable determination of the facts in light of the above detailed evidence

presented to the state court. Talbert is not entitled to relief on this claim.

b. *Ground Eight*

We next address the claim that "trial counsel was ineffective for failing to cross-examine the witness regarding 'whether penetration occurred [and] the specific part of the body that she alleged [he] penetrated and violated' when the victim was 12 years old and the two were inside of Appellant's truck, in New Jersey." (Doc. 1; Doc. 14, pp.   Doc. 12-2, p. 588).  During trial, the victim initially testified to a single incident that took place in his truck in New Jersey when she was approximately twelve years old.  (Doc. 12-1, p. 132).  She testified that this was the first time Talbert approached her and that he attempted to have intercourse with her in the sleeper portion of his "tractor trailer type truck."  (*Id.*). She could not recall whether there was vaginal penetration.  On cross-examination, Attorney Blake clarified with the victim that "[y]ou started talking about some matters that happened in a truck in New Jersey, and that's not part of the case that we're here for…", but did not cross examine her on whether there was penetration. (Doc. 12-1, p. 139).  Talbert argues that "[t]he failure to cross-examine the [victim] about the difference between he[r] statement alleging penetration/attempted penetration of the vigina [sic] versus her anus is critical, as they involve (2) distinctly different parts of the anatomy that cannot be reconciled."  (Doc. 14, p. 40).

The Superior Court addressed this claim in succinct fashion noting that the claim fails because he was not on trial for the alleged incident that took place in the truck while in New Jersey and, to the extent that there was testimony, it was admissible for the limited purpose of demonstrating Talbert's "passion or propensity for illicit sexual relations with [the victim]. PCRA Court Opinion, 11/15/16, at 7; *see also Commonwealth v. Dunkle*, 602 A.2d 830, 839 (Pa. 1992) (evidence of prior sexual misconduct with the victim is admissible to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial") (internal quotations, citations,  and corrections omitted)." (Doc. 12-2, p. 588). The court further observed "while there may have been slight variances in statements the victim gave during interviews and what she testified to at trial, these variances were *de minimis* and reasonable given that the alleged incident occurred about seven years prior to the trial. Thus, Appellant was not prejudiced by trial counsel's failure to cross-examine the victim on *de minimis* inconsistencies on a collateral matter." (*Id.* at 587, 588).

This determination is a reasonable application of the prejudice prong of *Strickland* and constitutes an objectively reasonable determination of the facts in light of the testimony elicited in the state court proceedings. Talbert is not entitled to relief on this claim.

c.  *Ground Ten*

We next consider Talbert's claim that the PCRA court violated his due

process rights "by its denial of the Newly Discovered Evidence that would of [sic]

proven his innocence…."  (Doc. 1-1, p. 3).  The Supreme Court treats actual

innocence as a gateway for consideration of procedurally defaulted claims.  *See*

*McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Schlup v. Delo*, 513 U.S. 298, 327–29,

115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (requiring a showing "that it is more likely

than not that no reasonable juror would have convicted [the petitioner] in the light

of the new evidence").  It has not yet recognized the existence of a freestanding

claim of actual innocence.  *See McQuiggin*, 569 U.S. at 392, citing *Herrera v.*

*Collins*, 506 U.S. 390, 400 (1993) (explaining "[c]laims of actual innocence based

on newly discovered evidence have never been held to state a ground for federal

habeas relief absent an independent constitutional violation occurring in the

underlying state criminal proceeding.").  However, as observed in a non-

precedential Third Circuit opinion, "the *Herrera* Court left open the possibility of a

freestanding claim of actual innocence (particularly in the capital context):

> We may assume, for the sake of argument in deciding this case, that *in*
> *a capital case a truly persuasive demonstration of "actual innocence"*
> *made after trial would render the execution of a defendant*
> *unconstitutional, and warrant federal habeas relief if there were no*
> *state avenue open to process such a claim.* But because of the very
> disruptive effect that entertaining claims of actual innocence would

> have on the need for finality in capital cases, and the enormous burden
> that having to retry cases based on often stale evidence would place on
> the States, the threshold showing for such an assumed right would
> necessarily be *extraordinarily high*.

[*Herrera*, 560 U.S.] at 417, 113 S.Ct. 853 (emphasis added).  Ultimately, the

petitioner did not make a sufficient showing of innocence because the affidavits he

submitted raised credibility issues more appropriate for a jury. *Id.* at 418–19, 113

S.Ct. 853."  *Wright v. Superintendent Somerset SCI*, 601 F. App'x 115, 120 (3d

Cir. 2015).

Like the petitioner in *Herrera*, Talbert does not seek excusal of a procedural

error; rather, he argues that newly discovered evidence would have proven his

innocence.  We conclude that, even if a freestanding claim of actual innocence is

cognizable, the merits of Talbert's claim "do[es] not satisfy the *Schlup* gateway

standard, much less the 'extraordinarily high' standard required by *Herrera*."

*Wright*, 601 F. App'x at 121.

The Superior considered the claim as follows:

> In his last claim, Appellant contends he is entitled to relief based
> on exculpatory after-discovered evidence.  *See* 42 Pa.C.S.A. §
> 9543(a)(2)(vi).  To obtain relief on this basis, Appellant must plead and
> prove by a preponderance of the, evidence the "unavailability at the
> time of trial of exculpatory evidence that has subsequently become
> available and would have changed the outcome of the trial had it been
> introduced."  *Id.*  To obtain relief based on after-discovered evidence,
> an appellant must show that the evidence:

(1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v, Foreman*, 55 A. 3d 532, 537 (Pa. Super. 2012), citing *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008).  To determine whether the evidence is "of such nature and character" to compel a different verdict in a new trial, a court should consider "the integrity of the alleged after-discovered evidence, the motive of those offering the evidence,  and the overall strength of the evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010), *appeal denied*, 14 A.3d 826 (Pa. 2010).

…

[The h]andwritten letter from [the victim] to her "Dad", presumably [Appellant's brother, Glenn Talbert], dated November [14], 2010, in which she states, among other things, that ". . . mom is protective of me, even though she doesn't know me." Additionally, the letter makes no reference to the  incidents that allegedly occurred between her and [Appellant].

Appellant's PCRA Petition, 2/8/16, at ¶26e.

It is unknown whether the letter was intended for Appellant or Appellant's brother.  Appellant argues that if the letter were intended for his brother, "the fact that the alleged victim fails to reveal alleged sexual abuse tends to make the occurrence of the alleged abuse less likely.  Appellant's Brief at 29. If, however, the letter were intended for Appellant, he argues, the fact that the alleged victim would write a letter of such sentiments to the person allegedly abusing her likewise makes the occurrence of the alleged abuse less likely." *Id.*

First, the letter was found by Appellant's sister in the house where Appellant lived.  At the PCRA hearing, Appellant's sister testified that it is possible the letter could have been found prior to trial, but was not.  N.T. PCRA Hearing, 7/29/16, at 29.  The letter was not signed by the victim and Appellant did not call the victim as a witness

during the PCRA hearing to verify she authored the letter. It is unknown who the intended recipient of the letter was. Furthermore, the fact that the letter does not mention the sexual abuse is not significant, as the absence of the statement is (at most) of negligible relevancy to prove the absence of the abuse. Accordingly, the PCRA court properly denied Appellant relief on this claim.

(Doc. 12-2, pp. 592-94).

The state courts reasonably concluded that Talbert failed to demonstrate that the November 14, 2010, letter met the four elements required to obtain relief based on after-discovered evidence. Further, to the extent that he asserts actual innocence, even if such a claim was available to Talbert, he wholly failed to establish that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329. Upon review of the record, the Court concludes that Talbert has failed to demonstrate that the state court's disposition of his after-discovered evidence claims was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Nor has he demonstrated that the state courts' determination of the facts were unreasonable in light of the evidence. No relief is warranted on this claim.

## V. <u>CONCLUSION</u>

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

## VI.   <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  Talbert fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent him from appealing the Order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b)(1).

A separate Order will enter.